## BAYLIS ET AL. v. MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.

[No. 131, September Term, 1958.]

*Decided February 18, 1959.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ., and HENRY, J., Chief Judge of the First Judicial Circuit, specially assigned.

*Jesse Spector,* with whom was *M. Jack Marshall* on the brief, for the appellants.

*Wilson K. Barnes,* with whom were *Hugo A. Ricciuti, Acting City Solicitor, Lloyd G. McAllister* and *Shirley B. Jones, Assistant City Solicitors,* and *Joseph Van Collom, Jr.,* on the brief, for the appellees.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court of Baltimore City dismissing a bill by residents and property owners to declare a rezoning ordinance invalid and to enjoin the

owners of 5205 Frederick Avenue, in Baltimore City, from using their property as a funeral home or undertaking establishment. The Ordinance, as originally introduced, proposed a change in classification from a "Residential Use District" to a "First Commercial Use District." It was referred to the Board of Municipal and Zoning Appeals, and also to the City Planning Commission, for reports and recommendations. The Board recommended approval, provided certain restrictions be included so that the property in question could be used only as a funeral home. The Planning Commission recommended disapproval on the grounds that no neighborhood need was shown, that the Ordinance would be "special privilege legislation", and that "legislation should not be based upon trades or conditions." After a hearing before the Council, certain amendments were made to the Ordinance to restrict the use of the property and reduce the area to be rezoned. In its final form, the Ordinance made the reclassification conditional upon the execution of an agreement, set out in the Ordinance, between the owners and the City, and the recording of such agreement among the Land Records of Baltimore City, so as to be binding upon the property owners, their successors, heirs and assigns.

The agreement provided that, in consideration of the rezoning, the owners would develop and maintain the property as a funeral home only, that the entrances and exits would be on Frederick Road, that adequate off-street parking facilities would be provided and maintained on the west side of the existing residence, and that all funerals would be formed on the property and not on the public streets. It was further provided that if said property should at any time not be used as a funeral home, the Ordinance would be "abrogated and repealed" and the zoning classification "automatically revert" to "Residential Use District"; if a new ordinance should be required to change the property back to "Residential Use District" (as the City Solicitor had advised), the property owners would not object to or oppose said Ordinance in any form.

The appellants contend that the Ordinance is invalid as "spot zoning", and that it is arbitrary and discriminatory, and has no substantial relation to the general welfare. They also

contend that the special conditions contained in the Ordinance are *ultra vires,* and that the agreement is unenforceable.

"Spot zoning" is a term used in many of the zoning cases, but as a descriptive term rather than a word of art. As Judge Hammond, for the Court, said in *Huff v. Bd. of Zoning Appeals,* 214 Md. 48, 57, "Such zoning may be invalid or valid. If it is an arbitrary and unreasonable devotion of the small area to a use inconsistent with the uses to which the rest of the district is restricted and made for the sole benefit of the private interests of the owner, it is invalid. *Cassel v. City of Baltimore,* 195 Md. 348, 355. On the other hand, if the zoning of the small parcel is in accord and in harmony with the comprehensive zoning plan and is done for the public good—that is, to serve one or more of the purposes of the enabling statute, and so bears a substantial relationship to the public health, safety, morals and general welfare, it is valid." [Citing cases.] The *Cassel* case involved a funeral home in a long established and built up residential district, and we found, on the facts, that there was no substantial basis for the reclassification. Cf. *Jack Lewis, Inc. v. Baltimore,* 164 Md. 146, 155, 159. It was noted in the *Cassel* case (p. 357), that the rezoning Ordinance contained a proviso that the premises should be used only as a funeral home, although the reclassification was from Residential to First Commercial, but the validity of the restriction was not raised or decided.

If we assume, without deciding, that there were distinguishing features in the instant case, on the facts, from those of the *Cassel* case, we think it is clear that the second contention of the appellants is well-founded. If it be true, as the City suggests, that the City has made a practice of imposing similar restrictions, it is all the more important that we pass on their power to do so under the statute and basic ordinance, when the point is squarely presented for the first time.

As the City concedes, Baltimore City derives its zoning powers from the State Enabling Act, Code (1957), Art. 66B, and not from its Charter. Cf. *Scrivner v. Baltimore,* 191 Md. 165. Sec. 3 provides that the regulation of uses by districts, authorized by Secs. 1 and 2, "shall be made in accordance with a comprehensive plan." The method of procedure for

adopting such plan is set forth under Sec. 4. Sec. 5 provides that boundaries may be changed from time to time by the legislative body, after reports and recommendations by the Planning Commission and the Board of Zoning Appeals, and after study by those agencies of the proposed changes with respect to the master plan of zoning, and the need thereof. It is this section that applies in the instant case. It is clear that the City Council need not follow the recommendations. We are not here concerned with Sec. 7 of the Act or Sec. 35 of the Ordinance (1958 ed.), authorizing the appointment of a Board of Zoning Appeals, and delegating it to the power to make special exceptions or variances, for the simple reason that no such application was made to the Board, and there is no claim of practical difficulty or hardship. Cf. *Marino v. City of Baltimore*, 215 Md. 206, 215.

The City argues that because the Board, which recommended the conditions and restrictions, had the power to grant special exceptions, the City Council has the same power. But this does not follow. It seems clear that such power was not retained in the Council, but has been delegated to the Board for exercise in special types of cases. We find no express language in the Act or the Ordinance authorizing the Board itself to impose conditions or restrictions, even in cases where it may properly order a special exception or variance. Such authority is spelled out in the Baltimore County Regulations, Sec. 502.2. We are not referred to any similar provision in the City Ordinance, although Code (1957), Art. 66B, sec. 7 (g) (4) provides that the Board shall have the power to approve "uses limited as to location under such rules and regulations as may be provided by ordinance of the local legislative body."

There is authority to the effect that reasonable conditions and restrictions may be imposed by a board in connection with a special exception or variance, at least where the power to do so is express, or may be fairly implied. *Oursler v. Bd. of Zoning Appeals*, 204 Md. 397, 406; *Woodbury v. Zoning Board of Review*, 82 A. 2d 164 (R. I.); *Selligman v. Western & Southern Life Ins. Co.*, 126 S. W. 2d 419 (Ky.). See also 8 McQuillin, *Municipal Corporations* (3d ed. Rev.),

§ 25.271, and 1 Yokley, *Zoning* (2d ed.), § 144. This is so because the whole basis for the exception is the peculiar hardship to the applicant, and the Board is justified in limiting the exception in such a way as to mitigate the effect upon neighboring property and the community at large. But these considerations disappear when we deal with a reclassification involving a revision of the comprehensive plan and a change in the district or zone by the legislative body. We think it quite clear that the Council must consider factors not applicable in a special exception or variance. As pointed out in *Baltimore County v. Missouri Realty Co.,* 219 Md. 155, in cases of reclassification the presumption of permanency must be overcome by proof of original mistake or change of conditions. Moreover, the Council, under the Enabling Act and Ordinance, has set up districts for Residential Uses, and First Commercial Uses. If it were permitted in special cases to allow inconsistent uses in such districts, it would destroy the uniformity required by Sec. 2 of the Enabling Act.

We said in *Wakefield v. Kraft,* 202 Md. 136, 149: "If the decision of the County Commissioners was that the area called for the status of Commercial A, any of the nineteen uses permitted under that classification had a rank and force equal to any other. The County Commissioners are not a Planning Board, nor have they a right to exact conditions, or promises of a particular use in return for deciding that the public interest justifies that an area should be zoned commercial. * * * This is not to decide, and we do not, whether an administrative official or board may, as a prerequisite to the granting of a variance, attach reasonable conditions. Many Courts have held that, within limits, this can be done." We find nothing to the contrary in *Ellicott v. City of Baltimore,* 180 Md. 176.

Courts in other states have reached the same conclusion as we did in the *Wakefield* case. See *Houston Petroleum Co. v. Automotive Prod. C. Ass'n,* 87 A. 2d 319 (N. J.); *Hartnett v. Austin,* 93 So. 2d 86 (Fla.); *Sandenburgh v. Michigamme Oil Co.,* 228 N. W. 707 (Mich.); *Church v. Town of Islip,* 160 N. Y. S. 2d 45 (N. Y.); *Town of Greenburgh v. Buser,* 148 N. Y. S. 2d 550 (N. Y.); Bassett, *Zoning,* p.

184. Cf. *V. F. Zahodiakin Eng. Corp. v. Zoning Board of Adjust.*, 86 A. 2d 127 (N. J.) ; note, 51 A. L. R. 2d 263, 309. There seem to be three chief reasons for the rule stated in these cases : that rezoning based on offers or agreements with the owners disrupts the basic plan, and thus is subversive of the public policy reflected in the overall legislation, that the resulting "contract" is nugatory because a municipality is not able to make agreements which inhibit its police powers, and that restrictions in a particular zone should not be left to extrinsic evidence.

In terms of zoning, the primary objection is the effect of permitting additional districts which have little or nothing in common and are unlike the basic zones.   While the uses permitted by variances, and to a much lesser extent special exceptions, may appear to give rise to comparable dissimilarity, the comparison is only superficial.   The peculiar circumstances which must be shown to support a variance from the basic plan in those instances distinguish them from facts such as those in the instant case, where the action taken is based solely upon collateral promises.   The former types of exception are, by their very nature, self-limiting ; the latter has no inherent restriction.

For all of the reasons stated in this opinion, we must reverse the decree of the Chancellor and remand the case for the entry of a decree granting the relief prayed.

*Decree reversed and case remanded;*
*costs to be paid by appellees.*