MONTGOMERY COUNTY, MD., ᴇᴛ ᴀʟ. *v.* MOSSBURG

[No. 292, September Term, 1961.]

556

*Decided May 8, 1962.*

The cause was argued before HENDERSON, HAMMOND,. PRESCOTT, MARBURY and SYBERT, JJ.

*Richard J. Sincoff, Assistant County Attorney,* with whom was *Alfred H. Carter, County Attorney for Montgomery County,* on the brief, for appellants.

Submitted on the brief by *Alger Y. Barbee* and *Harper M. Smith* for appellee.

HAMMOND, J., delivered the opinion of the Court.

Mossburg, the appellee, operates a restaurant, with a light wine and beer license, as a non-conforming use on a lot in Montgomery County zoned residential. He owns adjacent ground, also zoned residential, on which he desires to build additional kitchen facilities and dining room space as an extension of the existing building so that he may serve up to fifty more patrons at a time.

In 1959 he petitioned the County Council of Montgomery County to rezone the adjacent residentially zoned land commercial so that he could enlarge the restaurant establishment, and was turned down. In 1960 he applied to the Montgomery County Board of Appeals for a special exception to accomplish the same result. At the hearing, the Board received complaints from protesting neighbors that the appearance of the restaurant building was unsightly and unattractive, mainly because there were no trees or landscaping around it, and that

beer cans and bottles littered the grounds. The most vigorous complaints to the Board in the form of testimony, which was uncontradicted, were that much drinking of beer went on from 6:00 p. m. to 12:00 midnight and that the present operation of the place generated considerable noise as a result of patrons acting boisterously on the parking lot, drinking beer there, firing guns, spinning tires, gunning automobile engines and blowing horns. There was testimony that both the County and State police have been called repeatedly to clear the lot in the hours from midnight on until early morning.

The Board found that all setback and parking space requirements in relation to the extension would be met, and determined to grant the special exception, subject to the conditions that appropriate landscaping, shrubbery and trees be provided, that there be no bands or other live performances, that the property be kept free of litter, that no additional signs be erected, that the place be closed no later than eleven p. m. every night, that the parking lot be cleared by eleven-fifteen p. m. and that a chain then be placed across each entrance to the lot.

Mossburg, in a petition for reconsideration to the Board, contended that the conditions as to closing at eleven o'clock and as to clearing and barring access to the parking lot were unreasonable and unduly burdensome, and that the imposition of these conditions predetermined the inability of the Montgomery County Department of Licenses and Inspections, Department of Health, and Police Department to enforce the responsibilities the public entrusted to them, respectively. He claimed further that to close by eleven and clear the premises by eleven-fifteen would result in extreme financial hardship and possible failure and that he "would be obliged to refuse the right granted with attendant restrictions and continue operation under the present lawful non-conforming use in the original facilities and under the present existing mode of operation."

The Board granted the petition for reconsideration, but adhered to its original views, and Mossburg appealed to the Circuit Court for Montgomery County. There he contended that the conditions complained of were unreasonable, arbi-

trary and capricious; and that the requirement of closing at eleven imposed a limitation on an alcoholic beverage license granted by Montgomery County under the authority of Code (1957), Art. 2B, which permitted the sale of light wine and beer until midnight, and that the condition imposed "unlawfully tends to infringe upon and abrogate the right under said license." He prayed the granting of the special exception without the conditions complained of. Judge Pugh granted the relief prayed, apparently on the theory the Board of Appeals acted illegally in restricting the use of an alcoholic beverage license. We think he was in error in so doing.

It has long been held and is firmly established that it is not only proper but desirable to attach to the grant of a special exception conditions which do not violate or go beyond the law and are appropriate and reasonable. *Oursler v. Bd. of Zoning Appeals,* 204 Md. 397; *Baylis v. City of Baltimore,* 219 Md. 164, 168; 2 *Metzenbaum, Law of Zoning* (2d ed.), Ch. IX-m; 1 *Rathkopf, The Law of Zoning and Planning* (3d ed.), Ch. 49; 1 *Yokley, Zoning Law and Practice* (2d ed.), Sec. 144; 2 *Southwestern Legal Foundation, Institute on Planning and Zoning,* pp. 93-94.

Section 104.27 of the Montgomery County Code (1960) authorizes the granting of a special exception if the Board finds that the proposed use is compatible with the general development plan for the neighborhood and "will not affect adversely the health and safety of residents and workers in the area and will not be detrimental to the use or development of adjacent properties or the general neighborhood."

Section 104.28 (a) of the County Code provides: "The board may, and is hereby empowered to, add to the specific provisions enumerated herein others that it may deem necessary to protect adjacent properties, the general neighborhood, and the residents and workers therein."

In addition, Section 104.29 (aa-1) says, in part, that in a residential zone a special exception may be granted for "a tea house or restaurant and buildings accessory thereto upon a finding by the board that said use will not constitute a nuisance because of traffic, noise or number of patrons who visit such tea house or restaurant * * *."

In the present case the special exception would permit the extension of a commercial operation in a residential area. The conditions imposed all were designed and calculated to insure that the use authorized would be compatible with the neighborhood and that it would not adversely affect the health and safety of residents of the area and that the enlarged operation of the restaurant would not, in the words of Sec. 104.29 (aa-1), "constitute a nuisance because of traffic, noise or number of patrons who visit such tea house or restaurant * * *." This being so, unless the eleven o'clock closing requirement was in fatal conflict with the provisions of Art. 2B of the Code, it was authorized by the Montgomery County ordinances and was appropriate and reasonable. *Vlahos Realty Co. v. Little Boar's Head Dist.*, 146 A. 2d 257 (N. H.); *North Plainfield v. Perone*, 148 A. 2d 50, 55 (Super. Ct. N. J.), petition for certification denied, 150 A. 2d 292 (N. J.); *State v. City of East Cleveland*, 158 N. E. 2d 565 (Ct. App. Ohio); *Fifty-Fourth St. Center v. Zoning Board of Adjust.*, 150 A. 2d 335 (Pa.); *Lough v. Zoning Board of Review*, 60 A. 2d 839 (R. I.); *Vasilakis v. City of Haverhill*, 157 N. E. 2d 871 (Mass.) *Cf. Van Sciver v. Zoning Board of Adjustment*, 152 A. 2d 717 (Pa.).

Mossburg urges that the Board was in error here just as was the Board in *Crowther, Inc. v. Johnson*, 225 Md. 379, 384 where it said that the trailer park there applied for by special exception would constitute a hazard to health, and this Court, agreeing with the trial court, held that "the health threat" was not a bar because any health problem "could be easily alleviated and controlled by the Health Department authorities." We see distinguishing differences between *Crowther* and the case before us. In *Crowther*, the health problem was potential, if not imaginary. Here the existence of a nuisance to the neighborhood was proven to the satisfaction of the Board as a condition and not a fear. Health problems can be cured and need not recur; problems of traffic and noise can and do recur and may be a nuisance in a residential neighborhood without reaching a point where they would constitute disorderly conduct or some other crime with which the police could ef-

fectively deal. Cf. *Five Oaks Corp. v. Gathmann,* 190 Md. 348, 358 *et seq.*

We think the argument, in effect adopted by Judge Pugh, that the Board has no authority to regulate the hours of sale of alcoholic beverages or to limit the effectiveness of a liquor license, since this field has been preempted by the Legislature by its enactment of Art. 2B of the Code, misconceives the point. The Board did not purport to restrict or deal with the liquor license as such. It did no more than offer Mossburg the opportunity to expand his business as he desired, provided he did not, after eleven o'clock, exercise the privilege granted by his alcoholic beverage license to sell wine or beer or by his restaurant license to sell food. As Mossburg himself pointed out in his petition for reconsideration, he has the option of expanding, with the shortened hours which would make his use of his land compatible with the residential neighborhood in which it is, or he can "continue operation under the present lawful non-conforming use in the original facilities * * *." He may not, we think, as of right demand an unconditioned special exception. If he decides to accept a conditioned exception, it would appear that he would not thereafter be in a position to challenge the conditions, although we need not now decide the point. Compare *Zweifel Manufacturing Corp. v. City of Peoria,* 144 N. E. 2d 593 (Ill.), in which the zoning ordinance prohibited use of property for second hand automobile storage or sale and a dealer had been granted a variance to permit operation of a new car agency, and it was held (1) that one who has accepted and retained advantages of an order granting a variance cannot be heard to attack the validity or propriety of conditions upon which his right to such advantages was expressly predicated, and (2) the fact that the dealer's profits would be reduced by the need to maintain a used car lot at a distance did not make the ordinance invalid in the absence of a showing that the restriction was arbitrary and capricious or unrelated to proper objects of the police power. See also *North Plainfield v. Perone, supra,* for a similar holding as to the first point.

We have heretofore, at least by necessary implication, recognized that a condition to a special exception, the effect of

which was to limit the privilege granted by a liquor license, could validly be ordered by a zoning board. See *Oursler v. Bd. of Zoning Appeals,* 204 Md. 397, where the licensee had offered not to serve alcoholic drinks at a bar, as his license permitted, but only at tables with meals, and the Board and the lower court understood, in approving the special exception, that this would be the practice, and we said: "However, the permit contained no conditions whatever. We will, therefore, remand the case to the Court below for the passage of an order requiring the Zoning Commissioner to qualify the permit by limiting the use to the type of restaurant the applicants propose to conduct." *Id.* at 406.

The conditions attached to the special exception in the present case were valid, and Mossburg must either accept the exception as tendered or be limited to the original non-conforming use.

*Order reversed, with costs.*